Linda E. ANDERSEN, Appellant,

v.

EDDYVILLE–BLAKESBURG
COMMUNITY SCHOOL
DISTRICT, Appellee.

No. 96–567.

Supreme Court of Iowa.

Dec. 24, 1997.

Gerald L. Hammond, Des Moines, for appellant.

Richard J. Gaumer of Webber, Gaumer, Emanuel & Daily, P.C., Ottumwa, for appellee.

CARTER, Justice.

The plaintiff, Linda E. Andersen, challenges the district court's conclusion in this declaratory judgment action that her contract with the defendant-appellee, Eddyville–Blakesburg Community School District (the school district), did not automatically renew for the 1994–95 school year. Although we affirm the district court's declaratory judgment that plaintiff did not establish that her contract had been automatically renewed, we modify that portion of the judgment concerning the continuing status of the statutory termination proceeding.

Plaintiff was employed as an elementary school counselor for the school district (previously Eddyville Community School District) during the 1992–93 and 1993–94 school years. In April 1994 she received an overall unsatisfactory rating in a performance evaluation by her principal. Prior evaluations of her performance had also indicated major problems. As a result of the April 1994 evaluation, a decision was made to terminate plaintiff's contract and not permit it to automatically renew.

The necessary notice to accomplish the proposed contract termination was delivered to plaintiff on April 27, 1994. The delivery of that notice triggered a right on plaintiff's behalf to request a private hearing before the board of education pursuant to Iowa Code section 279.15(2) (1993). The plaintiff did request a private hearing before the board within the five-day period provided in the statute. She simultaneously requested that the hearing be indefinitely postponed until she had had an opportunity to fully pursue the grievance procedures for challenging performance evaluations established by the collective bargaining agreement.

At a special session of the district's board of education held on May 12, 1994, the board voted to terminate plaintiff's continuing contract but also agreed to postpone the private hearing that had been demanded until completion of the grievance process. Later, when advised that the vote to terminate the contract would be of no force and effect until the hearing process was concluded, the board rescinded its vote on the motion for termination.

The principal and superintendent initially refused to consider plaintiff's grievance concerning her April 1994 evaluation on the basis that the grievance was not filed within the ten-day period required by the collective bargaining agreement. As a result of that determination, plaintiff first sought arbitration of the school district's decision on the timeliness of her grievance. That arbitration resulted in a decision favorable to plaintiff. Thereupon, the principal and superintendent denied plaintiff's grievance on the merits. This prompted a second arbitration proceeding concerning the fairness and accuracy of the evaluation. The latter arbitration proceeding, which resulted in a decision favorable to the school district, was not concluded until December 6, 1994.

When the 1994–95 school year commenced and the arbitration of plaintiff's grievance had not yet been completed, she made a demand on the school district for payment of her salary for the 1994–95 school year. That demand was based on the contention that her contract should be deemed to have automatically renewed under section 279.13(2) as a result of the school district's failure to conclude the statutory termination procedures prior to the beginning of the next school year. This request was rejected by the school district. Subsequently, plaintiff submitted a resignation from her employment with the school district effective November 18, 1994.

Following receipt of the December 6 arbitration decision, which upheld the validity of the school district's evaluation of plaintiff, no further action was taken by the district's board with respect to rescheduling the private hearing that plaintiff had demanded. Approximately three months after receiving the final arbitration decision, plaintiff commenced this declaratory judgment action, seeking an adjudication that her contract had been automatically renewed for the 1994–95 school year and that, as a result, she was owed compensation by the school district from the beginning of that school year until her resignation became effective on November 18, 1994.

This action was tried to the court and resulted in a decision that determined plaintiff's contract did not automatically renew at the beginning of the 1994–95 school year because the statutory termination procedure contained in section 279.15 had been timely initiated by the school district and the delay in completing same was the result of plaintiff's request for a continuance of the statutory hearing until after completion of the arbitration process. The district court further concluded that, as of the time of the declaratory judgment hearing, plaintiff's contract with the district had been terminated in accordance with the statutory procedures. Plaintiff challenges both of these conclusions.

Both parties and the district court have likened this case to the situation in *Board of Directors v. Banke*, 498 N.W.2d 697 (Iowa 1993), in which we recognized that an automatic stay of the statutory termination procedures arises when determinations necessary to that process are committed to arbitration by a collective bargaining agreement. We need not invoke the judicially created doctrine of automatic stay in the present case, however, because the delay of the statutory procedures was the result of an agreement between the plaintiff and the school district. Although the agreement to delay the statutory process beyond the beginning of the next school year might require the district to pay two counselors' salaries should it ultimately lose in its efforts to terminate plaintiff's employment, that matter is yet to be determined.

■ The steps required to be taken by a school district in terminating a teacher's contract must be concluded at the statutorily mandated times. *Spilman v. Board of Dirs.*, 253 N.W.2d 593, 595 (Iowa 1977); *Barrett v. Eastern Iowa Community College Dist.*, 221 N.W.2d 781, 783 (Iowa 1974); *Flanders v. Waterloo Community Sch. Dist.*, 217 N.W.2d 579, 581 (Iowa 1974). It was nonetheless within the power of the parties to the present dispute to delay those procedures by agreement. Section 279.15(2) requires that the hearing be held "no sooner than ten days and no later than twenty days following the receipt of the request [for hearing] unless the parties otherwise agree." The parties clearly did otherwise agree. This agreement was that the hearing was to be indefinitely postponed until conclusion of the grievance and arbitration procedure concerning the 1994 evaluation of plaintiff's performance. The postponement of the private hearing also necessarily postponed those procedures in the statutory process that follow that hearing.

■ It was within the contemplation of both plaintiff and the school district that this process would not be concluded prior to the commencement of the 1994–95 school year. This delay left the issue of automatic contract renewal unsettled at the beginning of the 1994–95 school year. There was no indication, however, that either party intended to give up any rights as a consequence of the delay. As the school district's superintendent testified at trial, it was the intention of both the school district and the teacher to put the statutory process on hold until the arbitrator made a decision on the merits of plaintiff's challenge to the evaluation.

■ The district court, although properly rejecting plaintiff's contention that her contract automatically renewed at the beginning of the 1994–95 school year, improperly concluded that her contract had been terminated according to statute at the time of the trial of the declaratory judgment action. The only argument advanced by the school district in seeking to uphold that portion of the district court's judgment is that the teacher waived any right to conclude the hearing process by reason of her resignation. That conclusion is untenable. Plaintiff's resignation clearly states that it is effective on November 18, 1994. This document appears to have been drafted for the express purpose of preserving her contractual rights under the statutory termination procedures prior to that date.

All of plaintiff's actions in this matter have been entirely consistent with an intent to preserve her statutory rights, including her writing of letters to the school district and the bringing of this declaratory judgment action. No basis exists for inferring a waiver of any contract or statutory rights that she might have held for the period antedating November 18, 1994.

Consistent with our conclusion that neither party acted to waive their statutory rights, we modify the district court's declaratory judgment so as to provide that, although plaintiff's contract did not stand automatically renewed for the 1994–95 school year at the time of the trial of the declaratory judgment action, it will automatically renew unless the school district acts within a reasonable period of time after issuance of the procedendo to schedule the required private hearing and the statutory processes following that hearing ultimately lead to the termination of plaintiff's employment. The costs of appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**

All justices concur except SNELL, J., who concurs specially.

SNELL, Justice (special concurrence).

I concur in the result reached by the majority, but I write separately to clarify an issue that the parties addressed in their briefs and which has not been adequately addressed by the majority opinion. The majority opinion briefly discusses the issue of when the judicially-created automatic stay arises. The opinion states that the rule from our decision in *Banke* is "that an automatic stay arises when determinations necessary to that process are committed to arbitration by a collective bargaining agreement." This statement slightly misconstrues our holding in *Banke* and necessitates clarification as to when the automatic stay on statutory termination procedures arises in the face of a grievance filed by an employee.

Iowa Code section 279.13(2) provides that a contract with a teacher "shall be automatically continued ... except as modified or terminated by mutual agreement of the board of directors and the teacher or as terminated in accordance with the provisions specified in this chapter." Iowa Code § 279.13(2). Chapter 279 provides for termination of a teacher's contract by the board of directors after a recommendation of termination by the superintendent and a private hearing, if requested by the teacher. *Id.* § 279.15. In some instances, however, the statutory procedure for termination outlined in chapter 279 is not the exclusive remedy for a teacher threatened with termination. *See Waterloo Educ. Ass'n v. Waterloo Community Sch. Dist.*, 372 N.W.2d 267, 268 (Iowa 1985); *Shenandoah Educ. Ass'n v. Shenandoah Community Sch. Dist.*, 337 N.W.2d 477 (Iowa 1983).

In a series of cases, our court found that arbitration may be an alternative remedy if the collective bargaining agreement between the school district and the local education association so provides. *Waterloo*, 372 N.W.2d at 268. However, only those matters specified as subject to arbitration in the master agreement between the local education association and the school district are subject to arbitration as a right of the employee. *See Atlantic Educ. Ass'n v. Atlantic Community Sch. Dist.*, 469 N.W.2d 689, 691–92 (Iowa 1991). For example, in *Atlantic*, the

court found that an employee's assertion of arbitration rights regarding a termination recommendation was improper. *Id.* The court noted that the bargaining agreement involved did not "clearly provide for arbitration of grievances concerning performance evaluations that result in termination recommendations." Therefore, the school district in *Atlantic* acted properly in refusing to stay the chapter 279 termination proceedings pending arbitration. *Id.*

In 1993, our court followed the holding in *Atlantic* by finding that an automatic stay of termination proceedings arises when a teacher files an arbitrable grievance under the local education association's collective bargaining agreement. *Board of Dirs. v. Banke*, 498 N.W.2d 697, 700 (Iowa 1993). We noted in *Banke*, however, that under the rule set forth in *Atlantic* "the 'automatic stay' is contingent on whether the decision to terminate the teacher is arbitrable under the collective bargaining agreement." *Id.* at 700 n. 2 (citing *Atlantic*, 469 N.W.2d at 691).

The majority's statement that *Banke* stands for the proposition that an automatic stay of the statutory termination procedures arises when determinations *necessary* to that process are committed to arbitration by a collective bargaining agreement is inaccurate when viewed in light of the language of our prior decisions. Based on the language in *Banke* and other prior cases, the automatic stay does not arise unless the *decision or recommendation to terminate* is arbitrable under the collective bargaining agreement. *See Banke*, 498 N.W.2d at 700 n. 2; *Atlantic*, 469 N.W.2d at 691 (citing *Shenandoah*, 337 N.W.2d at 480). If the termination decision is not arbitrable, then the termination proceedings under chapter 279 take precedence. *Atlantic*, 469 N.W.2d at 691.

The matter of arbitrability is a legal issue which the court must determine through interpretation and construction of the collective bargaining agreement between the association and the district. *Id.* (*citing Iowa City Community Sch. Dist. v. Iowa City Educ. Ass'n*, 343 N.W.2d 139, 141 (Iowa 1983)). The master agreement between the Eddyville–Blakesburg School District and the local education association for 1993–94 governs the

issue of arbitrability. The terms of the agreement are incorporated into every teacher's contract. Article VI of the agreement delineates the grievance procedure and defines a grievance as, "an alleged violation, misinterpretation or misapplication of any of the specific provisions of this Agreement." Article XII of the agreement provides the procedure to be utilized in evaluating employees covered by the agreement. Section F of Article XII provides that an "employee has the right to file [a] grievance [regarding an evaluation] only in the case of an overall unsatisfactory evaluation." There is no article in the agreement, however, providing a right to file a grievance when a recommendation to terminate is issued.

In *Waterloo,* this court required a school district to arbitrate its decision to terminate a teacher's contract when the contract expressly provided that an employee had a right to elect to file a grievance if the employee questioned the good and proper cause of discharge. *Waterloo,* 372 N.W.2d at 267. In the instant case, the agreement does not provide for arbitration of a termination recommendation or decision. Under the foregoing analysis, the Board could have held the termination hearing prior to the outcome of the grievance procedure because the decision to terminate was not arbitrable under the agreement.

Andersen argues that the chapter 279 proceedings should be stayed whenever the grievance filed "would impact the termination proceedings." This reading of the applicable precedent is significantly broader than our actual holdings in *Banke* and *Atlantic,* which state that the stay is contingent on whether the decision to terminate is arbitrable under the applicable bargaining agreement. *See Banke,* 498 N.W.2d at 700; *Atlantic,* 469 N.W.2d at 691.

Furthermore, the Board could have made its decision to terminate Andersen without the evaluation. The majority opinion states that an automatic stay should arise when determinations necessary to the termination process are committed to arbitration. The issues of the fairness of the evaluation and the recommendation to terminate are not so intertwined that the decision to terminate could not be made without a finding by the arbitrator as to the fairness and accuracy of the evaluation. I see no reason to modify our prior holdings that the automatic stay is contingent upon whether the issue, in this case the recommendation to terminate, is arbitrable under the applicable collective bargaining agreement.

To extend the holding of our prior cases to mandate a stay when a grievance is filed that *may impact* the termination proceedings would seriously hamper the ability of school districts to effectively manage teaching personnel and eliminate unsatisfactory teachers from its ranks. If such a construction were given to our prior decisions, many more instances like that in the case at bar would arise, in which arbitration cannot be completed prior to the beginning of a new school year. Such a result would be unfair to both school districts and teachers. As Andersen argues, she was placed in contractual limbo at the start of the new school year because her grievance and termination procedures were not completed prior to that time. Requiring a stay of termination procedures when nearly any grievance is filed would only worsen this problem. Furthermore, if the local education association desires a provision requiring arbitration of a termination recommendation prior to initiation of chapter 279 proceedings, it could attempt to negotiate with the school district under Iowa Code chapter 20 for such a provision. A court should not modify or amend a collective bargaining agreement freely negotiated between a district and an education association. This court has recognized the importance of the chapter 279 termination procedure to school districts and acknowledged that some latitude must be granted to school districts to exercise this power without the imposition of a mandatory stay whenever a teacher files a grievance, in the absence of a specific arbitration requirement in the collective bargaining agreement.