STATE of Iowa, Employer, Appellee,

v.

AFSCME IOWA COUNCIL
61, Appellant.

AFSCME Iowa Council 61, Appellant,

v.

State of Iowa and Iowa Department
of Human Services, Appellees.

Iowa Department of Human Services,
Employer, Appellee,

v.

AFSCME Iowa Council 61, Union,
and Craig Dehoet, Grievant,
Appellants.

Nos. 00–1378, 01–0315.

Supreme Court of Iowa.

July 17, 2002.

Michael E. Hansen, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Gordon E. Allen, Deputy Attorney General, for appellee.

CARTER, Justice.

American Federation of State, County, and Municipal Employees (AFSCME), Council 61, as representative of Cathy Nordyke and Craig DeHoet, employees discharged from the Woodward State Hospital School, now known as the Woodward

Resource Center (WRC), appeals from separate district court judgments vacating arbitrators' awards reinstating Nordyke and DeHoet to the positions they had held prior to their discharges. In each case, the discharge from employment resulted from a records check pursuant to Iowa Code section 218.13 (1999) that indicated criminal convictions on the part of the discharged employees. The district court in each case determined that the arbitrators' award reinstating the employment of Nordyke and DeHoet limited or impaired the statutory discharge procedure envisioned by section 218.13, and as a result, both arbitration of the discharge and the award reinstating employment were prohibited by Iowa Code sections 20.17(6) and 20.28. After reviewing the record and considering the arguments presented, we affirm the judgments of the district court on both appeals.

## I.  *The Nordyke Arbitration.*

The State of Iowa, through the Department of Human Services (DHS), operates the WRC. Pursuant to Iowa Code section 222.1, WRC provides treatment, training, instruction, care, habilitation and support for persons with mental retardation or other disabilities. AFSCME represents employees of WRC involved in the collective-bargaining unit pursuant to the collective-bargaining agreement. Nordyke was a resident treatment worker at WRC prior to her termination, and is a member of AFSCME.

In 1996 Nordyke was arrested for OWI first offense and driving with a suspended license. In 1998 she was arrested for OWI second offense and for assaulting the arresting officer. Nordyke pled guilty to the charges and served ninety days in the women's correctional facility.

DHS conducted a criminal-record-check evaluation under Iowa Code section 218.13.

It was DHS's conclusion that Nordyke's continued reliance on alcohol and the assaultive nature of her arrest suggested more than a possible hazard for the WRC residents. She was terminated.

Nordyke filed an administrative appeal and participated in a contested-case hearing. The administrative law judge affirmed her termination. She then filed an appeal to the department director. Nordyke had also contemporaneously filed a grievance with AFSCME. An arbitration was held, and the arbitrator found "just cause" had not been shown for her termination. The arbitrator ordered the State to reinstate Nordyke, subject to specified conditions.

While Nordyke's appeal to the director was pending, the State filed a petition to vacate the arbitrator's award in the district court. In response, AFSCME filed a motion to dismiss and strike, a cross-petition to enforce the arbitrator's award, and a motion to adjudicate law points. Each was resisted by the State. A hearing was held on June 6, 2000, after which a decision was filed overruling AFSCME's motions and granting the petition to vacate the award. AFSCME has appealed.

## II.  *The DeHoet Arbitration.*

In this companion case, DeHoet was employed as a residential treatment worker at WRC. In February 1999 WRC requested a criminal-record-check evaluation on DeHoet. The report concluded he had been convicted of simple assault (against his wife) and also had a then-pending domestic abuse assault (against his then-girlfriend).

Upon receipt of this information, DeHoet was given an opportunity to explain the incidents and his subsequent efforts to change his behavior. In evaluating the factors delineated in section 218.13, DHS

determined DeHoet should be terminated because of the assaultive nature of the crimes, the pattern of assault against two different victims, the recent reoffense, and the risk of such behavior toward the residents of WRC.

DeHoet filed an administrative appeal and participated in a contested-case hearing. The administrative law judge affirmed the termination, and his decision was adopted by the department director. DeHoet filed a petition for judicial review. He also filed a grievance with AFSCME, which resulted in an arbitration hearing. The arbitrator issued a decision on February 4, 2000, finding DHS did not have "just cause" to terminate DeHoet and ordered DHS to reinstate him, subject to specified conditions.

On February 22, 2000, AFSCME filed a petition to enforce the arbitrator's award, and DHS filed a motion to vacate the award. The district court first affirmed the employee's termination on the petition for judicial review under Iowa Code chapter 17A. It then denied AFSCME's petition to enforce the award and granted DHS's petition to vacate the award. AFSCME filed a notice of appeal. Other facts that guide us in deciding this appeal will be discussed in connection with our consideration of the legal issues presented.

### III. *Standard of Review.*

█ In determining the arbitrability of a grievance, the "threshold" question is ordinarily whether the parties agreed to settle the dispute by arbitration. *Postville Cmty. Sch. Dist. v. Billmeyer*, 548 N.W.2d 558, 560 (Iowa 1996). The court is obliged to answer the question as a matter of law, based on interpretation and construction of the parties' agreement. *Id.* In public employee bargaining cases, the court must also consider whether the applicable provision of the collective-bargaining agreement

or a particular portion of an arbitrator's award are foreclosed by statute. Iowa Code §§ 20.17(6), 20.28.

### IV. *The Collective Bargaining Agreement.*

In the present dispute, the collective-bargaining agreement authorizes the state to "[s]uspend, discipline or discharge employees for proper cause." This right is specifically discussed in the grievance portion of the agreement, which states:

The parties recognize the authority of the Employer to suspend, discharge or take other appropriate disciplinary action against employees for just cause. The employee who alleges that such action was not based on just cause may appeal a suspension or discharge taken by the Employer beginning with the third step of the grievance procedure. All other disciplinary action shall begin with the first step of the grievance procedure.

Any disciplinary action or measure imposed upon an employee may be processed as a grievance through the grievance procedure. The Employer shall not discipline an employee without just cause, recognizing and considering progressive discipline where applicable.

The Employer shall provide written notification to affected employees prior to beginning an investigation into allegations of child abuse pursuant to Chapter 235A of the Code of Iowa and allegations of dependent adult abuse pursuant to Chapter 235B of the Code of Iowa and at the conclusion of such investigation.

It appears that step three of the grievance procedure is an appeal to the director of the department of personnel. If the grievance cannot be resolved at this level, arbitration is then authorized: "Grievances which have not been settled under the

foregoing procedure are eligible for arbitration." Both Nordyke and DeHoet alleged that they were terminated without "just cause." Consequently, the collective-bargaining agreement authorized arbitration of the termination grievances unless this was precluded by a specific statutory provision.

## V. *The State's Statutory Defenses.*

■ AFSCME urges that, once arbitrability under the collective-bargaining agreement is established, the question for the court is a narrow one, *i.e.*, whether the award drew its essence from the collective-bargaining agreement. This contention is based on our pronouncements in *American Federation of State, County & Municipal Employees v. State*, 526 N.W.2d 282, 283 (Iowa 1995), and *Sergeant Bluff–Luton Education Ass'n v. Sergeant Bluff–Luton Community School District*, 282 N.W.2d 144, 148 (Iowa 1979). While this is the standard for resolving most arbitration disputes, there is another consideration in arbitrations arising from the collective-bargaining agreements of public employees. In those cases, we must also consult the applicable statutory law governing public-employee arbitration.

■ Public employee contracts are creatures of statute. *Lee v. Halford*, 540 N.W.2d 426, 429 (Iowa 1995); *Hammer v. Branstad*, 463 N.W.2d 86, 91–92 (Iowa 1990). The right of public employees to organize and collectively bargain is governed by statute, and in creating this process, the legislature is free to limit the bargaining process, what may be contained in a collective-bargaining agreement, and the authority of arbitrators to order specific types of relief.

In the present cases, the State urges that both the arbitration of the dispute and the award are precluded by statute. It bases this argument on the following statutory directives:

> If the department determines that a person, who is employed by an institution . . . has been convicted of a crime or has a record of founded child or dependent adult abuse, the department shall perform an evaluation to determine whether prohibition of the person's employment . . . is warranted.

Iowa Code § 218.13(3).

> In an evaluation, the department shall consider the nature and seriousness of the crime or founded child or dependent adult abuse in relation to the position sought or held, the time elapsed since the commission of the crime or founded abuse, the circumstances under which the crime or founded abuse was committed, the degree of rehabilitation, the likelihood that the person will commit the crime or founded abuse again, and the number of crimes or founded abuses committed by the person involved. The department may permit a person who is evaluated to be employed or reside or to continue employment or residence if the person complies with the department's conditions relating to employment or residence which may include completion of additional training.

Iowa Code § 218.13(4).

> *If the department determines that the person has committed a crime or has a record of founded child or dependent adult abuse which warrants prohibition of employment . . . the person shall not be employed by an institution.*

Iowa Code § 218.13(5) (emphasis added).

> No collective bargaining agreement or arbitrator's decision shall be valid or enforceable if its implementation would . . . substantially impair or limit the per-

formance of any statutory duty by the public employer.

Iowa Code § 20.17(6).

A provision of the Code which is inconsistent with any term or condition of a collective bargaining agreement ... shall supersede the term or condition ... unless otherwise provided by the general assembly.

Iowa Code § 20.28.

■ The State urges that under Iowa Code section 20.28 the so-called "record check" termination procedures contained in section 218.13 are inconsistent with the collective-bargaining agreement. It also urges that Iowa Code section 20.17(6) renders the arbitrator's decision unenforceable because its implementation would impair the obligation of the DHS to terminate Nordyke and DeHoet under the provisions of Iowa Code section 218.13(5).

We disagree with the State's first argument and conclude that, for purposes of applying section 20.28, the collective-bargaining agreement is not in conflict with any of the statutory provisions upon which the State relies. However, unlike section 20.28, which only governs the collective-bargaining agreement, section 20.17(6) also governs the arbitrator's decision. In applying that statute, we agree that the award of the arbitrator does impair a statutory duty of the public employer.

In reaching this conclusion, we are aware that the statutory scheme presented in section 218.13 and particularly the last sentence of subsection 4 thereof does not mandate termination in all cases in which a record check reveals a criminal conviction. Nevertheless, in determining whether the department was under a duty to discharge the employees, we must consider what the department's evaluation of the facts was and not what it might have been. In the present case, it was the duty of the public employer to move sequentially through the "record check" steps for investigation and evaluation as provided in section 218.13. When, at the evaluation step called for in subsection 5, the department concluded that the criminal activity of Nordyke and DeHoet warranted "prohibition of employment," it then became the department's duty to discharge these employees. Viewed in this light, we are convinced that the arbitrators' awards reinstating these employees impaired the department's statutory duty to discharge them.

AFSCME urges that we took a different view of section 20.17(6) in *Postville Community School District*, 548 N.W.2d at 562. In that case, a school district sought to preclude enforcement of an arbitrator's award reinstating a discharged employee by urging that forcing it to reinstate that employee would impair its general duty to furnish its students a safe environment. We held that the arbitrator's award did not violate section 20.17(6). We are satisfied that the *Postville Community School District* case may be distinguished on the basis that, unlike the present dispute, it did not involve a specific statutory directive with respect to the termination of employees. The district court did not err in vacating the arbitrator's decision reinstating Nordyke and DeHoet.

## VI. *Other Issues.*

Other issues urged by AFSCME in seeking to overturn the district court's judgments include the contention that the court was required to hold a hearing on its motion to compel arbitration prior to considering the State's application to vacate the awards. We find no merit in AFSCME's argument that its motion to compel was required to be separately considered in advance of the State's motions. Assuming that it was, it would have made no difference in the result. As a result of

our interpretation of the controlling statutes, AFSCME would have been destined to fail on its motions to enforce the awards.

AFSCME's other contention is that the governor, by authorizing state agencies under his control to enter into a collective-bargaining agreement that does not, by language in the contract, limit the scope of an arbitrator's authority to reinstate a discharged employee, has waived the statutory provisions on which the State relies. We disagree. As we have previously noted, all public employee contracts are creatures of statute, and statutory conditions that are not expressly stated therein will be given the same force and effect as if they had.

We have considered all issues presented and conclude that the judgments of the district court should be affirmed.

**AFFIRMED ON BOTH APPEALS.**